IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-20-SLR |
| | ) | |
| RODERICK JAMISON, | ) | |
| | ) | |
| Defendant. | ) | |

David C. Weiss, United States Attorney and Ilana H. Eienstein, Assistant United States Attorney. United States Attorney's Office, District of Delaware. Attorneys for Plaintiff United States of America.

Luis A. Ortiz, Esquire and Daniel I. Seigel, Esquire, Assistant Federal Public Defenders. Federal Public Defender's Office, District of Delaware. Attorneys for Defendant Roderick Jamison.

**MEMORANDUM OPINION**

August 25, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. BACKGROUND

On February 12, 2009, a federal grand jury charged defendant Roderick Jarnison with failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).[1] The indictment alleges that defendant: (1) had a duty to register as a sex offender based on two Delaware sex offense convictions; (2) traveled in interstate commerce from Delaware to Texas; and (3) failed to register or update his registration in Texas. (D.I. 2)

Defendant entered a plea of not guilty and, subsequently, moved to dismiss the indictment, arguing that both the civil registration statute, 42 U.S.C. § 16913, and the criminal statute, 18 U.S.C. § 2250(a), exceed Congressional authority under the Commerce Clause. (D.I. 15) Plaintiff United States of America has filed its opposition, to which defendant has filed a reply. (D.I. 19, 20) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion to dismiss the indictment will be denied.

## II. STANDARD OF REVIEW

A motion to dismiss an indictment should be directed only toward the sufficiency of the evidence to prove the indictment's charges. *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000). In making this determination, the court must assume all the allegations in the indictment are true. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir.1990). An indictment will be deemed sufficient where the "elements of the offense intended to be charged, sufficiently apprises the defendant of what he must be

---

[1] In order for a defendant to be convicted under this statute, the government must prove that the defendant: (1) was required to register in some jurisdiction; (2) knowingly failed to register or update prior registration; and (3) traveled in interstate commerce.

prepared to meet and allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp,* 500 F.3d 257, 280 (3d Cir. 2007) (citations and internal quotation omitted).

Federal statutes are presumed constitutional and will only be invalidated on a "plain showing" that Congress exceeded its authority under the United States Constitution. *United States v. Morrison*, 529 U.S. 598, 607 (2000); *United States v. Pendleton*, 2009 WL 330965, at *3 (D. Del. Feb. 11, 2009). An "action based on an invalid statute must be dismissed." *United States v. Clayton*, 2009 WL 1033664, at *5 (W.D. Pa Apr. 16, 2009). Moreover, "the Third Circuit [has] explained that where Congress acts under its commerce authority, statutes are entitled to a presumption of validity." *Id.* (Third Circuit applies a rational basis test in the context of the Commerce Clause).

## III. LEGISLATIVE BACKGROUND

On July 27, 2006, Congress enacted the Sex Offender Registration and Notification Act ("SORNA") as a component of The Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). *United States v. Howell*, 552 F.3d 709, 713 (8th Cir. 2009). The Act was created to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of . . . child crime victims." *Clayton*, 2009 WL 1033664, at *2 (quotations omitted).

2

SORNA was enacted to "protect the public from sex offenders and offenders against children by establishing a national system for registration of sex offenders." 42 U.S.C. § 16901. It was also designed to "close the gaps inherent in a network of independent state systems" that did not prevent sex offenders from moving between states in order to evade registration requirements. *United States v. Gould*, 568 F.3d 459, 463 (4th Cir. 2009); *see also* 152 Cong. Rec. S8012, 8013 (July 20, 2006). A House Judiciary Committee report described the problem as follows:

> There is a wide disparity among State registration requirements and notification obligations for sex offenders. This lack of uniformity has been exploited by child sexual offenders with tragic consequences. Given the transient nature of sex offenders and the inability of the States to track these offenders, it is conservatively estimated that approximately 20 percent of 400,000 sex offenders are lost under State sex offender registry programs.

*Howell*, 552 F.3d at 716 (quoting H.R.Rep. No. 109-218, at 23 (2005)).

To effectuate these goals, Congress created a comprehensive national sex offender registration system designed to track the interstate movement of sex offenders and to prevent sex offenders from evading detection by moving from one State to the next. *United States v. Ambert*, 561 F.3d 1202, 1205 (11th Cir. 2009); *Howell*, 552 F.3d at 716. In so doing, Congress also recognized that "sex offenders constitute a unique class of criminal insofar as members of that class are considered to have higher rates of recidivism than other offenders." *Gould,* 568 F.3d at 472.

SORNA's registration requirements provide:

(a) In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in

3

which convicted if such jurisdiction is different form the jurisdiction of residence.

42 U.S.C. § 16913(a). The sex offender is also required to register within a specific time period and to keep the registration current. *Id.* § 16913(b) - (c).

SORNA establishes a new federal crime for persons who are required to register under § 16913, but fail to do so. *United States v. Whaley*, __ F.3d ___, 2009 WL 2153651, at *1 (5th Cir. July 21, 2009). Section 2250(a) provides:

> (a) In general.-Whoever-
> (1) is required to register under SORNA;
> (2)(A) is a sex offender as defined for the purposes of the SORNA by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by SORNA; shall be fined under this title or imprisoned not more than 10 years, or both.

SORNA directs the United States Attorney General to "maintain a national database . . . for each offender." 42 U.S.C. § 16919(a).

With respect to the obligations placed on the States, Congress conditions the receipt of federal law enforcement funds on States' compliance with the standards set for sex offender registration and enforcement. *Id.* § 16925 (any State failing to timely comply with SORNA for sex offender registration will not receive 10% of the funds that would be allocated for local law enforcement and justice assistance). SORNA also requires that: (1) each State establish an Internet website including information about sex offenders within its jurisdiction, *id.* § 16918; (2) States include all sex offenders on their registration roles, *id.* § 16912; (3) States substantially implement the standards by

4

July 2009, *id.* § 16924; and (4) States establish standards for prosecuting State law violations of the registration act, *id.* § 16913(a).

## IV. DISCUSSION

### A. 18 U.S.C. § 2250(a)

Defendant argues that 18 U.S.C. § 2250(a) ("the criminal statute") exceeds Congressional authority to regulate interstate commerce. (D.I. 15, 20) Specifically, defendant asserts that the jurisdictional element is insufficient to bring the statute within one of the three permissible categories of commerce regulation recognized by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995). The government counters that the overwhelming majority of courts have found the criminal statute within Congress' authority under the Commerce Clause. (D.I. 19)

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. at 606. The United States Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and the Indian Tribes." U.S. Const. art. I. § 8, cl. 3. Congress' "power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce" has been firmly established." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005).

The Supreme Court has identified three expansive categories of activity that Congress may regulate under its commerce power. *United States v. Lopez*, 514 U.S. 549, 558 (1995). First, Congress has authority to regulate the use of the channels of interstate commerce ("the channels"). *Id.* at 558. In so doing, Congress has the power

5

to keep the channels of interstate commerce free from immoral and injurious uses. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964).

Under the second *Lopez* category ("the instrumentalities"), Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Lopez*, 514 U.S. at 558. The third *Lopez* category ("substantially affects") includes Congress' authority to "regulate those activities having a substantial relation to interstate commerce," that is "those activities that substantially affect interstate commerce." *Id.* at 558-59 (citations omitted).

Against this authority, the court concludes that defendant's claim that the criminal statute exceeds Congress' authority under the Commerce Clause is without merit, thereby joining the majority of courts that have reached the issue.[2] First, the

---

[2]Although the Third Circuit has not addressed the issue, over 80 courts have found the statute derives its authority under one, two or three of the *Lopez* categories. *See, e.g., Whaley*, __ F.3d ___, 2009 WL 2153651 (channels and instrumentalities); *United States v. Letourneau*, 2009 WL 2391526 (5th Cir. Aug. 4, 2009) (channels and instrumentalities); *Gould*, 568 F.3d 459 (channels and instrumentalities); *Ambert*, 561 F.3d 1202 (channels and instrumentalities); *United States v. Hinckley*, 550 F.3d 926 (10th Cir. 2008) (channels and instrumentalities); *United States v. May*, 535 F.3d 912 (8th Cir. 2008) (channels and instrumentalities); *United States v. Dixon*, 551 F.3d 578 (7th Cir.2008) (Commerce Clause challenge rejected outright); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008) (channels and instrumentalities); *United States v. Sanders*, 2009 WL 1867689 (W.D. Wis. June 26, 2009) (Commerce Clause argument rejected in light of *Dixon*); *United States v. Nelson*, 2009 WL 1867673 (S.D. W.Va. June 29, 2009) (Commerce Clause not violated); *United States v. Hernandez*, 2009 WL 1396365 (E.D. Mich. May 18, 2009) (channels and instrumentalities); *Clayton*, 2009 WL 1033664 (instrumentalities and substantially affect); *Pendleton*, 2009 WL 320546 (channels and instrumentalities); *United States v. Shenandoah*, 572 F. Supp.2d 566 (M.D. Pa. 2008) (instrumentalities); *United States v. Zuniga*, 2008 WL 2184118 (D. Neb. May 23, 2008) (instrumentalities); *United States v. O'Dell*, 2009 WL1347141 (N.D.N.Y. May 13, 2009) (channels and instrumentalities); *United States v. Ditomasso*, 552 F.Supp.2d 233 (D. R.I. 2008) (instrumentalities); *United States v. Craft*, 2008 WL

criminal statute only applies to those sex offenders failing to register or update a register after traveling in interstate travel. In this case, defendant is charged with failing to register after traveling from Delaware to Texas. This falls within the first *Lopez* category. See Whaley, __ F.3d __, 2009 WL 2153651, at *3. Further, the criminal statute has a jurisdictional element that only applies when the sex offender fails to register or update a registration after traveling in interstate commerce. This interstate travel element is an express jurisdictional trigger that falls within Congress' power to regulate and protect the channels and instrumentalities of interstate commerce, including "persons or things in interstate commerce." *Lopez*, 514 U.S. at 558. "When a sex offender travels from one state to another, he is an instrumentality of interstate commerce, and by regulating these persons in SORNA, Congress has acted under its Commerce Clause power to regulate an instrumentality." *Ambert*, 561 F.3d at 1211; *United States v. Hernandez*, 615 F. Supp.2d. at 615.[3]

Notably, Congress limited the enforcement of the registration requirement only where the sex offender travels in interstate or foreign commerce.[4] *Howell*, 552 F.3d at

---

1882904 (D. Neb. Apr. 23, 2008) (channels and instrumentalities); *United States v. Elliott*, 2007 WL 4365599 (S.D. Fla. Dec. 13, 2007) (instrumentalities); *United States v. Beasley*, 2007 WL 3489999 (N.D. Ga. Oct. 10, 2007) (instrumentalities); *United States v. Gonzales*, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007) (instrumentalities) *United States v. Muzio*, 2007 WL 1629836 (E.D. Mo. June 4, 2007) (instrumentalities); *United States v. Templeton*, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007) (instrumentalities).

[3]Having found either of the first two *Lopez* categories applicable, it is unnecessary to consider whether the third category is satisfied.

[4]Section 2250(a) also makes it a federal crime for failure to register as required under 42 U.S.C. § 16913 where the sex offender is convicted of a federal sex offense.

7

716. "[E]ven if we were to assume that the harms and targeted illegal conduct were purely local in nature, the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense" under the criminal statute. *Ambert*, 561 F.3d at 1211. Moreover, the purpose of SORNA is to "address specific problems that flow as a direct consequence of a sex offender's travel between jurisdictions." *Clayton*, 2009 WL 1033664, at *6.

### B. 42 U.S.C. § 16913

Defendant explains that his constitutional challenge to 42 U.S.C. § 16913 ("the civil statute") arises from the structure of the criminal statute, which requires that the government must first prove that the sex offender was required to register under the civil statute. (D.I. 17, 20) He submits that, because the duty to register under the civil statute is not conditioned upon proof of a nexus to interstate commerce, the civil statute exceeds Congressional authority under the Commerce Clause.

The government argues that the civil statute functions as an element of the criminal statute and is a necessary component of SORNA's broad legislative scheme. (D.I. 19) When considered in the context of SORNA as a whole, the government contends that there is a nexus with interstate commerce and the regulation substantially affects interstate commerce.

The court agrees. Both the civil and criminal statutes were enacted as part of the Adam Walsh Child Protection and Safety Act, and are complementary. *Whaley*, ___ F.3d ___, 2009 WL 2153651, at *3. "Both provisions are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to

register and, conversely, failure to register cannot be enforced without a criminal penalty." *Shenandoah*, 572 F. Supp.2d at 577 n. 7; *Whaley*, __ F.3d __, 2009 WL 2153651, at *3 (without the criminal statue, the civil statute lacks criminal enforcement and without the civil statute, the criminal statute has no substance).

Likewise, both statutes are part of the comprehensive legislative effort enacted by Congress to protect the public from sex offenders by establishing a national system for registration for sex offenders. *Gould*, 568 F.3d at 472-74. Both statutes share the same purpose, that is, ensuring that sex offenders register and update register when moving interstate, among jurisdictions. *Whaley*, __F.3d __, 2009 WL 2153651, at *4; *Ambert*, 561 F.3d at 1212 ("Congress did not focus on individual local registration as an end in itself, but rather as part of its goal to create a system to track and regulate the movement of sex offenders from one jurisdiction to another"); *Howell*, 552 F.3d 709 (extensive analysis of the necessity and validity of the registration requirements and its furtherance of Congress' Commerce Clause authority).

To the extent that the civil statute applies to sex offenders remaining intrastate, by requiring registration both before and after they travel in interstate commerce, the court finds the Necessary and Proper Clause affords Congress with the requisite authority. *Whaley*, __ F.3d ___, 2009 WL 215365, at *5. The Necessary and Proper Clause "grants Congress the power to 'make all Laws which shall be necessary and proper' for executing its other enumerated powers." *Pendleton*, 2009 WL 330965, at *4 (quotation omitted).

As the explained by the Supreme Court, "[l]et the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819). To that end, the law must be a "rational and appropriate means to further Congress' regulation of interstate commerce." *United States v. Barner*, __ F. Supp.2d __ , 2009 WL 819385, at *8 (N.D. N.Y. Mar. 27, 2009). Moreover,

> the authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws governing intrastate activities that have a substantial effect on interstate commerce. Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those activities that do not themselves substantially affect interstate commerce.
> \*     \*     \*
> The relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power.

*Gonzales v. Raich*, 545 U.S. at 34 (Scalia, J., concurring) (citation omitted).

Registration under the civil statute is necessary to track sex offenders who move from jurisdiction to jurisdiction. "In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated." *Howell*, 552 F.3d at 717. Absent knowing the sex offender's initial location (intrastate), "there is nothing to ensure the government would know if the sex offender moved." *Id.* Moreover, "[r]equiring all sex offenders to register is an integral part of Congress' regulatory effort and the 'the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Gould*, 568 F.3d at 475 (quoting *Raich*, 545 U.S. at 24-25). In light of this authority, the court finds that requiring sex

offenders to register before and after they travel in interstate travel is "reasonably adapted to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions." *Whaley*, __F.3d __, 2009 WL 2153651, at *4.

## IV. CONCLUSION

For the reasons stated, defendant's motion to dismiss is denied. An appropriate order shall issue.